**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

~~FILED~~

2019 JAN -8  P  1: 50
**COMPLAINT FORM**
U.S. DISTRICT COURT
NEW HAVEN, CT.

TERRANCE MORRISON

Full name(s) of Plaintiff(s)
(Do not use *et al.*)

Case No. __3:19cv32(VLB)__
(To be supplied by the Court)

v.

CITY OF WATERBURY

Full names of Defendant(s)
(Do not use *et al.*)

**A. PARTIES**

1. Terrance Morrison _____ is a citizen of ___CT_____ who
   (Plaintiff)                                          (State)
   presently resides at 482 Wolcott St.  Waterbury, CT  06705_____.
                      (mailing address)

2. Defendant City of Waterbury _____ is a citizen of ___CT_____
   (name of first defendant)                                  (State)
   whose address is 236 Grand St.  Waterbury, CT  06702_____.

3. Defendant _____ is a citizen of _____
                          (name of second defendant)                          (State)

whose address is _____.

(If more space is needed to furnish the above information for additional defendants, continue on a blank sheet which you should label "A. PARTIES."  Be sure to include each defendant's identity and complete address.)

## B. JURISDICTION
The jurisdiction of this court is invoked pursuant to: (list statute(s))

_____

_____

## C. NATURE OF THE CASE

**BRIEFLY** state the background of your case.

Bullying, unfair treatment, threatening with racial affiliation in the workplace.
Withholding of wages.

## D. CAUSE OF ACTION

I allege that the following of my constitutional rights, privileges, or immunities or my rights under a federal statute have been violated and that the following facts form the basis of my allegations: (If more space is needed to explain any allegation or to list additional supporting facts, continue on a blank sheet which you should label "D. CAUSE OF ACTION.")

**Claim I:** I was bullied, threatened, and treated unfairly in the workplace and some of my wages

have not been paid.

Supporting Facts: (Include all facts you consider important, including names of persons involved, places, and dates. Describe exactly how each defendant is involved. State the facts clearly in your own words without citing legal authority or argument.)

**Claim II:** See enclosed

Supporting Facts:

## E. REQUEST FOR RELIEF
WHEREFORE, plaintiff demands: (state the relief you seek)

$300,000 and reinstatement to Civil Service position Attendance Counselor with 15 years retro time towards retirement.  ALL vacation, sick, personal days from 2004 to present.

Or $1,500,000.

## F. JURY DEMAND

Do you wish to have a jury trial?  Yes   X          No

_____          _Terrance Morrison_ (signature)
Original signature of attorney (if any)   **Plaintiff's Original Signature**

                                          Terrance Morrison
_____          Printed Name
Printed Name
                                          482 Wolcott St.  Waterbury

                                          Waterbury, CT  06705

( )                                       (203) 753-8286
Attorney's full address and telephone     Plaintiff's full address and telephone

                                          rence32@hotmail.com

Email address if available                Email address if available


# DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and correct.  28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at _New Haven_ on _1/8/19_ .
                (location)        (date)

_Terrance Morrison_ (signature)
**Plaintiff's Original Signature**


(Rev.3/29/16)

5

# D: CAUSE OF ACTION

I started working at Waterbury Adult Education in April of 2002. The hourly rate at that time was $27 per hour. All teachers and counselors were paid at that rate.

In 2004 I was informed by my boss, Dr. Martin Galvin that if I did not get the certification endorsement 107 by the next year my hourly rate would be reduced to $24 per hour. I didn't get it by 2005 and my rate was reduced. I was told that in order to regain the higher rate I would have to prove that I have the certification.

I acquired the information to attain the certification and it was as follows:
    Show proof of a Bachelor's degree
    Pay for and pass a Psychology course (Psychology of the Exceptional Learner)
    Pay for and pass the Praxis 1 examination
    Pay for and send transcripts to CT Dept. of Education
    Pay for the certification

I did all of the above in 2006/2007.

In the fall of 2007 I asked if my job (Attendance/Crisis counselor) was the same as the posting, Attendance Counselor (enclosed), listed on the employment board. I wanted to know why I wasn't receiving the benefits that the posted job comes with. I was told that there were no benefits for attendance counselors and there was no union for them. I showed the posting to Dr. Galvin and he said that he would look into it. I was actually holding two positions, Crisis Counselor (Prevention Specialist) and Attendance Counselor. Both of these positions had a benefits package. The Attendance Counselor position was a Civil Service position and the Prevention Specialist position was grant funded.

I received the certification in January of 2008, and presented it to my new boss, Antonio Musto. He didn't want to raise my hourly rate. I had to involve another teacher/facilitator, Roxanne Monaco, who told him that everyone with that certification gets paid the higher rate. At that time the rate had been increased to $29 per hour. It took a while, but my hourly rate was increased.

I asked Mr. Musto if he could check into my prior inquiry about the civic service position (Attendance Counselor). He said he would look into it. After a few months I asked about it again and he said I had to go downtown. I went downtown and they told me a request had to come from Mr. Musto. I felt like the ball in a tennis match. I went back to Mr. Musto and he told me that I will NEVER get benefits unless I know someone downtown.

During the fall semester of 2008 Mr. Musto asked me if I minded sharing my office with the night principal, Paul Drewry. I didn't mind at all. Mr. Drewry must have had a pet because there was cat/dog hair, which makes me sneeze and makes my eyes red and swollen, all over the chair in the office. I asked Mr. Musto to contact Mr. Drewry to let

him know that I was affected by the hair. The next day or so there was a sweater draped over the chair that looked like someone cleaned a hair-filled room with it. I had to ask one of the secretaries to remove it for me. Mr. Musto said he sent Mr. Drewry an email regarding the issue.

In December 2008 Mr. Musto called me into his office and told me that he didn't want me to speak to Mr. Dosia Lamar anymore because he didn't like him. He went on to tell me that if I continued to talk to him I would get into trouble. I then told him, "What ever is going on between you and Mr. Lamar has nothing to do with me and I didn't want to be involved". "With all due respect, the only person that can get me into trouble is me".

On December 18, 2008 I received a memo (enclosed) from Mr. Musto telling me to move my belongings from my office into the guidance office. The space inside the guidance office was behind a cubicle and was very uncomfortable for me physically. Every time I would move back from my desk I would hit my head on the cabinet that was on the wall. Also, there was no privacy for the students who wanted to talk to me about their problems etc. I told Mr. Musto about it and he said, with an attitude, "Get comfortable or there is the door". I signed out and went to the education office downtown to file a complaint. I was directed to Mr. Jim Murray, the assistant director of personnel. I explained the entire situation to him and he told me to just go back to work the next day and he would talk to Mr. Musto. When I went to work the next day my password to log in to my computer was already terminated and had to be recreated.

On January 16, 2009 I received a memo (enclosed) from Mr. Musto to attend a disciplinary hearing with the director of personnel, Ron Frost, Jim Murray, and him on January 21, 2009.

On January 21, 2009 I met with Mr. Musto and Jim Murray. Mr. Frost was not there. During that meeting Mr. Musto told Mr. Murray that I had been a great employee and had not been a problem at all. He stated that I was very calm and respectful when I left the building on December 18. I told Mr. Murray that the space in the guidance office was very uncomfortable and I felt segregated from everyone else. I felt like I was inside of a small box. Mr. Murray asked to see the space. I brought him to the office and sat down at my desk. Mr. Murray agreed that the space was not suitable for me and that it looked very uncomfortable. We went back into Mr. Musto's office and I said that I didn't understand why I had to leave my office in the first place. The office was empty during the day. Mr. Musto then said, with an attitude and with his hand in my face, "You are not going back into that office". I then asked Mr. Murray to tell Mr. Musto to take his hand away from my face. Mr. Musto replied, "I'm Italian, what are you gonna do?" I asked Mr. Murray what race has to do with this. The room went silent and then Mr. Murray said he would be in touch with a solution to the problem.

On February 10, 2009 I received a memo (enclosed) from Mr. Musto regarding the meeting we had on January 21. It was a "written warning" stating my actions, walking off my assignment without authorization, were disrespectful and hinges on insubordination.

In the spring of 2009 I had to renew my certification, and in order to do that I had to fill out a form and send it downtown for the Superintendant to verify my hours worked. I dropped the form off and had to wait for it to come back to me so I could send it to Hartford. It took months for me to receive the form back from downtown. Meanwhile, my boss called me into his office on the first day of school to tell me, with a smile on his face, that he had to reduce my hourly rate to $24 again because I let my certification expire. I then told him that I did what I was supposed to do and was waiting for the form to come back from downtown. I also had to show him the "received" stamped form from downtown. He then told me, with an attitude, "Don't worry about it then". I felt like I was being bullied. This was an attempt to take away my money.

On September 25, 2009 I had to write a statement (enclosed) regarding an altercation outside of the guidance office between two students. I wrote the statement and gave it to Mr. Musto. He called me into his office and asked me to put Mr. Dosia Lamar's name on the statement because he was in the vicinity of the altercation. I told him that Mr. Lamar was not involved at all, other than being a witness. He said to put everyone's name down that was there. I told him that the other custodian, Andy was there too and should I write his name on it too. He then told me, with an attitude, to leave it the way it is. After that I was told not to even come out of the guidance office. Mr. Musto told me he better not see me in the hallway. So, I stayed in the office.

Again, I felt like I was being bullied. I go to work every day and do my job, and more, just to be treated unfairly. I was forced out of my office into an isolated box inside of another office with other counselors. I was forced to stay inside of that box and not to come out into the hallway or I would be in trouble. It felt like a prison sentence except there was no crime committed. I stayed in that office for more than a year.

In October 2011, The Civil Service position Attendance Counselor was posted (enclosed) again. I applied and received a letter stating that I did not qualify for that position, even though that was the position I held for the last 5 years or so.
I went to the Mayor's office and asked to meet with the Mayor about the benefits package. I was directed to his assistant, Mr. Monroe Webster. I showed Mr. Webster a copy of my job description and the second posting for Attendance Counselor. He said there was no difference in the two and I should receive benefits. He said he would speak with human resources and get back to me. After a few weeks of waiting I called Mr. Webster to check the status and he informed me that I was not going to receive benefits because I was an employee of Adult Education and we do not have benefits down there. I told him that we had three teachers there who were contracted by Civil Service which entitles them to benefits. He said that my position does not come with benefits.

As I continue to go to work everyday I realize more and more how I am treated differently from everyone else. Teachers were not allowing the passes I wrote for students to suffice. Teachers were talking down to me like I was a student, and they should not talk down to students either. They acted as if they were superior to me. When I talked to Mr. Musto about it he told me not to worry about it he would handle it.

NOTHING changed. In fact, it got worse. If I signed off on a Dr's note some teachers would not accept it saying that I don't know what I am doing and the note is not acceptable. If I wrote a tardy pass for a student some teachers would not let the student into class and mark them absent. This kept going on. We would have staff meetings and Mr. Musto would tell everyone to accept all passes from me and from him. Some teachers still didn't follow instruction and nothing was done about it.

My office was once again moved. I was moved inside of the book room (library) where the space was even smaller. My desk was in front of a huge window that allowed the sun to shine directly on me. I shared that office with the late Mary Russo. She was in charge of the book room. I stayed in that room for a while until I was again moved into an office that was between the book room and another office that belonged to Madeline Bacik.

I went through years of "punishment" just to be put into my own office again. My original office was vacant during this entire "punishment" period.

On July 2, 2015 I was informed by Mr. Musto that my hourly rate had been reduced, again, to $24. I asked why this time and he said it was a decision from downtown. He told me that Kathy Awad said that I should not make $32 per hour since the other Attendance Counselors do not make that much. I called downtown and asked to meet with the Mayor because enough was enough. I was told I had to go through the "chain of command". I did everything I was told as far as the "chain of command" goes.

On Wednesday, September 2, 2015, I had a meeting with Paul Guidone and Mr. Musto downtown regarding the entire money/benefits situation. Mr. Guidone took notes and said he would get back to me by Friday, September 4. After a week I had not heard anything from Mr. Guidone so I called and spoke with his secretary, Margaret. She told me he was working on it. This went on for months.

Finally, on December 14, 2015 I received a call from Mr. Guidone's secretary telling me that nothing would be done about getting my money back or getting the benefits I was entitled to. She went on to tell me that Mr. Guidone couldn't do anything about it because he had been retired since June 30, 2015.

I didn't understand why I was meeting with someone who doesn't even work for the city anymore. This was another slap in the face and an insult to my intelligence. This put me back to square one. I didn't know who to call anymore because I felt like everyone was playing games with me.

I received a call from Mr. Robert Brenker, the new director of personnel. He scheduled a meeting with me and determined I should get benefits after seeing all of the information I was holding. He told me that he was going to see Scott Morgan, the Civil Service director, as soon as I leave his office. He assured me that I would receive the benefits. I called Mr. Brenker about a week later to check the status. He told me, with an attitude, that I was not going to receive benefits and the only thing he was going to do is raise my hourly rate to be the same as the highest paid contracted Attendance Counselor ($28.20)

and I should be happy that I have a job. I told him that was still $3.80 less than what I was making. He told me to take that because that is all he is going to do.

I then called Mr. Scott Morgan to ask why this was happening. Mr. Morgan told me that I needed to work 35 hours per week to qualify for benefits and I only work 30 hours. He said he would see what he could do about the situation. I told him that I didn't have a problem working an extra hour per day. He said he couldn't just add an hour to my work day, it is not that easy. Mean while there was another employee at Adult Ed who was given a contract with benefits and this employee only worked 25 hours per week.

I met with Mr. Morgan and Mrs. Anne Phelan, Human Resources assistant, to discuss the unfairness of someone getting what I had been asking for all these years. I showed proof of everything and they both said they would get back to me. I never heard back from either of them.
I called Mrs. Phelan several times regarding retro pay for the difference in pay ($4.20 per hour) for the time that I was being paid $24 per hour and she would always say she has not heard back yet. At this point I am going to work and doing my job ONLY, nothing more and nothing less.

Now it is March of 2017 and I was approached by Mrs. Roxanne Monaco. She came to my desk and said, "The secretaries and the ESL office staff feel like this is beneath them so can you call these students". She was holding a folder that was about an inch thick with students' names. She wanted me to call every student to let them know what day school started. We have NEVER done that before. I, of course, was insulted by her original comment about the other staff feeling above doing what she wanted me to do. I didn't make any phone calls. Mr. Musto came to my desk and sarcastically asked me how the calls were going. I told him that with everything that is going on with my situation downtown I felt that I should do what is in my job description only. He said that at the bottom of my job description is states that I am to do whatever he tells me to do. I know that is not written on my job description. He asks me if I am going to make the calls, and be careful how I answer in front of everyone. I said that I preferred not to make the calls. As I was trying to explain why, he walked away from me. I was still talking as he walked away. Again I was treated like I was less than human.

Toward the end of that day Mr. Musto came to my desk with Mr. Brenker. Mr. Brenker sat down at my desk and said, "So you have a problem today". I replied," No I do not have a problem". He then says, "You don't want to do what you are told". As I started to reply he started talking over me. Every time I would try to reply he would just talk over me. I asked, "How can we resolve this issue if you won't listen to my reply"? He said, "I don't have to listen to you". He continued to talk to me like I was nothing. He told me that I have to do whatever Mr. Musto tells me to do. He said if Mr. Musto tells me to go outside and shovel snow, I am to do just that. I asked him if I could get that in writing. He said no. I said that if my job description was going to change then I would like it in writing. He said he was not going to put anything in writing. He said if I do not do what I am told my job would be in jeopardy. Again, I am being bullied.

About a month or so later I was visited by Mrs. Phelan and she want to take a statement from me regarding that incident. She said she would be in touch with me in a few days. Needless to say, I never heard back from her.

The next call I received was to come downtown on June 28, 2017 for a meeting. At this meeting I was given a letter (enclosed).

There is so much more but I am just tired of thinking of all the unfair treatment and biases within the city. It is depressing because I gave Adult Ed 15 years of my life and I had a positive influence on every student I spoke to. I also had a positive influence on some of the staff members.

As of today, January 8, 2019, I still have not received the retro pay.

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To:   **Terrance Morrison**
      **482 Wolcott Street**
      **Waterbury, CT 06705**

From:   **Boston Area Office**
        **John F. Kennedy Fed Bldg**
        **Government Ctr, Room 475**
        **Boston, MA 02203**

☐   On behalf of person(s) aggrieved whose identity is
    CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2018-00151 | **Amon L. Kinsey, Jr.,** **Supervisory Investigator** | (617) 565-3189 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☒   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** **before you file suit may not be collectible.**

On behalf of the Commission

*Feng An, Kenneth*

**Feng K. An,**
**Area Office Director**

OCT 1 0 2018
(Date Mailed)

Enclosures(s)

cc:

**CITY OF WATERBURY BOARD OF EDUCATION**
**Dr. Kathleen M. Ouellette, Superintendent**
**236 Grand Street**
**Waterbury, CT 06702**

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*